**UNITED STATES of America,
Plaintiffs,**

v.

**Stanley LOJEK, Defendant.**

**Case No. 1:10cr351.**

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 9, 2010.

Justin J. Roberts, Office of the U.S. Attorney, Cleveland, OH, for Plaintiffs.

Roger M. Synenberg, Law Office of Roger Synenberg, Cleveland, OH, for Defendant.

*Sentencing Memorandum and Order*

DAN AARON POLSTER, District Judge.

On September 14, 2010, Defendant Stanley Lojek pled guilty to an Information pursuant to a written plea agreement charging him with conspiracy to commit bribery.

The Northeast Ohio Regional Sewer District ("NEORSD") is a political subdivision and agency of the state of Ohio. The service area covers all or portions of 60 suburban municipalities in Cuyahoga, Summit and Lorain counties and includes a diversified group of manufacturing and processing industries. Williams B. Schatz was General Counsel of NEORSD. Robert J. Kassouf was President of The Kassouf Company which managed part of a joint venture that performed significant work on Mill Creek Tunnel Contract (Phases 2 and 3), part of a sewage tunnel system designed to provide relief to overloaded sanitary and sewer systems. Defendant Stanley Lojek was President of Harvard Refuse, Inc., a land refuse company that provided, among other things, parking lot and machine rental to the Kassouf Company.

Between 2000 and 2007, Kassouf paid Schatz more than $600,000 in bribes to influence and reward Schatz in connection with dispute claims between Kassouf Company and NEORSD. Lojek essentially laundered these bribe payments through Harvard Refuse, Inc. Schatz would invoice Harvard Refuse, Inc. for legal services that were not performed and received checks from Harvard Refuse. Lojek in turn invoiced Kassouf Company for payments not due Harvard Refuse. Kassouf Company paid those invoices knowing that the money would go to Schatz.

At the December 3, 2010 sentencing, the Court went over the advisory guidelines computations. The base offense level is 12. The Court added 14 levels because the value of the bribes to Schatz exceeded $400,000. Four levels were added because the offense involved a public official in a high level decision-making or sensitive position (the general counsel of the NEORSD). There was a dispute as to whether the two-level increase for more than one bribe should apply (Section 2C1.1(b)(1)). The Probation Department recommended that it apply; the Government argued that it should apply; the defendant argued that it should not. Although all the payments ultimately went to the same person, there were multiple payments over a seven-year period. Accordingly, the two-level enhancement applies. There was a four-level reduction for minimal participant, a two-level reduction for acceptance of responsibility, along with a third level off for a timely guilty plea, producing an adjusted offense level of 25. The government made a motion for a downward departure for substantial assistance pursuant to Section 5K1.1, and recommended a six-level departure. The Court granted the motion and accepted the recommendation. This put Lojek at offense level 19, history category I (30–37 months). The government is urging that I impose a sentence within the advisory guideline range of 30–37 months, and the defendant is urging that I impose a sentence that does not include any prison time. The Court has reviewed the very thorough Presentence Report and the detailed memorandum that each side filed. I have read carefully each and every letter that was submitted on behalf of Mr. Lojek and, of course, I've listened carefully and thoughtfully to both attorneys and to Mr. Lojek this afternoon.

The touchstone of sentencing, of course, is 18 U.S.C. 3553(a). I am required to consider everything I can learn about Mr. Lojek, everything I can learn about this offense, and then consider all of the factors set out in the statute, along with the correctly-computed advisory guideline range, and then impose a sentence which is sufficient, but not greater than necessary, to meet the statutory purposes of sentencing, which are punishment, deterrence, protecting the community, and rehabilitation.

It's very easy to say all that. It is much, much harder to actually do it. And I've said often that the loneliest spot in the world is the one I'm occupying now, and I have often wished that I could be anywhere else.

At my investiture about 12 years ago, my Rabbi urged me to keep both justice and mercy in mind. I have often told people about that and how at the time I thought it was pretty easy, until I started doing it and began to realize, of course, that everyone wants justice when it's someone else and mercy when it's they or someone close. The two are absolutely irreconcilable, and all that one human being can do is to keep both objectives in mind and wrestle with them. And that's what I've been doing since I knew I was going to have to sentence Mr. Lojek and

since I started reading the presentence report and all these letters.

And, of course, these factors cut in different ways. I don't think Mr. Lojek needs to be deterred. He has been deterred. But, of course, there are two types of deterrence. There's specific deterrence, and that's what Mr. Synenberg has talked about, and there's general deterrence, and that's what Mr. Roberts has talked about.

With respect to specific deterrence Mr. Lojek doesn't need to be deterred. He will never do this again. But sadly, there are a lot of people out there in this community who need to be deterred from participating in corruption.

Mr. Lojek, the scheme that you let yourself get involved in, and that you had many opportunities to stop, has had a devastating consequence. It is not just on the Sewer District. If you talk to anyone on the street in this county, he or she is likely to have formed the opinion that everyone in public service is a crook or got his or her job from a crook and that you can't trust anyone. The general view is that we're like a third world country, but the fact is most of the people in public service are just hard working men and women who do their job and try to do it well.

And those few who aren't honest, needed people like you to launder their bribes. And that's what you did. You helped launder bribes and you knew what you were doing. And without people like you who are willing to participate, a lot of the bribery would probably not have happened. While it's easy enough to say that, if you didn't do it, Schatz and Kassouf would have found someone else, well, they might not have. If you had said no, maybe they would have stopped. And if not, if they went to the second or third person, and if these people had said no, then at some point, they would have said, hey, this isn't what we should do.

On the positive side of the ledger, you have unquestionably lived a very exemplary life and done many very good things for others, individually and collectively, and there are very few people I have had to sentence who have had the kind of support here in the courtroom and the kind of support I've seen in all those letters.

And you are 83 and your health is what one would expect for an 83–year–old. Many things don't work as well as they used to. I have to balance all that and there's no perfect way to do it, and maybe it's because I've been a public servant for 34 plus years, that I am keenly impacted by this kind of bribery and corruption, because I have a sense of what the temptations are when one is in public office and the impact that this bribery and corruption has on our system of government.

Because, quite frankly, that's all we have. It's the men and women who have responsibility and authority. We depend on them to exercise it and to resist temptation and not to be perfect, of course, but to be honest.

There are many places in this world where the norm is the opposite and I don't think there's anyone who wants to go down that road. Sadly, in this county, we've taken many steps in the wrong direction.

So what I'm going to do is to try and balance everything that I've said and impose a sentence that is sufficient, but not greater than necessary, to meet the statutory purposes of sentencing. I think in this case a sentence of 30 to 37 months is greater than necessary to meet all those objectives, but a sentence of probation, even with home detention and community service, is not long enough.

So I'm going to depart downward six levels on account of your age and your health and some of the extraordinary

things that you've done, and because this criminal activity was an aberration in that long and productive life. That puts us at offense level 13, criminal history category I, which is 12 to 18 months, and I'm going to sentence you to one year and one day custody of the Attorney General.

Most people who read about this will say that either the sentence was too heavy or too light, and they're entitled to their opinions, but I've tried to balance those 3553(a) factors the best way that I can.

That sentence will be followed by a period of supervised release of two years. All the standard conditions apply.

I'm not imposing a fine. I don't believe you have the resources to pay one.

There is restitution. In my view, the restitution should be the amount of money that went to Mr. Lojek's company. I've ordered or will be ordering Mr. Kassouf and Mr. Schatz to pay back the more than $600,000 in bribes that went to Mr. Schatz. Lojek's company, Harvard Refuse, Inc. did receive between $30,000 and $57,000. I would like counsel to confer and agree upon a specific figure. That money should be repaid to NEORSD.

**IT IS SO ORDERED.**